# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **SCHOOL FOR THE ARTS IN LEARNING (SAIL) PUBLIC CHARTER SCHOOL**<br><br>Plaintiff,<br><br>v.<br><br>**JOZETTE JOHNSON,** *et al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 02-1722 (RMC)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION</u>

This case concerns the special education needs of J.J., who attended the School for the Arts in Learning (SAIL) Public Charter School during the school years 2000-2001, 2001-2002 and September 2002-December 2002. Compl. ¶ 4. SAIL appeals a July 29, 2002, Hearing Officer Determination ("HOD"), issued under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq* (2000). While the parties have resolved implementation of the HOD, there remains an outstanding question of whether Ms. Johnson should receive attorney's fees in connection with that (and this) litigation. The Court stayed the case while settlement was attempted. That effort was unsuccessful and the Court now turns to the merits.

The Court finds that SAIL provided a free appropriate public education ("FAPE") to J.J. and will enter an order in its favor.

## I.  BACKGROUND

### A.  Statutory Framework

Under the IDEA, disabled students are entitled to a FAPE. *See* § 1412(a)(1)(A).

Congress' specific intent is evident in the "Purpose" section of the statute:

> to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living; to ensure the rights of children with disabilities and parents of such children are protected; and . . . to assess, and ensure the effectiveness of, efforts to educate children with disabilities.

§§ 1400(d)(1)(A), (d)(1)(B), (d)(4).  Under the IDEA, all States, including the District of Columbia, are required to "establish 'policies and procedures to ensure'" that a FAPE is made available to all disabled children within every school district.  *Branham v. Gov't of the District of Columbia*, 427 F.3d 7, 8-9 (D.C. Cir. 2005); *Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005); *see* § 1412(a)(1)(A).  A "child with a disability" is defined as a child "with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . , orthopedic impairments, autism, . . . other health impairments, or specific learning disabilities; and who, by reason thereof, needs special education and related services."  § 1401(3)(A).  "Once such children are identified, a 'team' including the child's parents and select teachers, as well as a representative of the local educational agency with knowledge about the school's resources and curriculum, develops an 'individualized education program,' or 'IEP,' for the child."  *Reid*, 401 F.3d at 519 (citing 20 U.S.C. §§ 1412(a)(4), 1414(d)).

## B.  Underlying Facts

J.J. was enrolled at SAIL in August 2001.  He was eligible to receive special education services as a student with a specific learning disability.  Mot. Summ. J. at 2.  Pursuant to IDEA, SAIL drafted an Individual Education Plan ("IEP") for J.J. and attempted to convene a multi-disciplinary team ("MTD") meeting on December 18, 2000, to consider it.  *Id.*  Ms. Johnson, J.J.'s

mother, did not arrive for the meeting and it was rescheduled for January 31, 2001.  *Id.*  However, Ms. Johnson did not attend that meeting either.  *Id.*  The meeting was finally conducted on February 2, 2001, when Ms. Johnson signed the IEP.  *Id.*  The front page of the IEP was dated with each of three dates: December 18, 2000; January 31, 2001; and February 2, 2001.  *Id.*

  A year later, a team meeting was held with the parent's advocate, Michael Byers, on January 22, 2002.  *Id.*  At that meeting, the team agreed to perform full reevaluations on J.J., which had initially been requested by Ms. Johnson on January 8, 2002.  *Id.* at 3.  Mr. Byers agreed with the team that they would wait until the evaluations were completed to update the IEP.  *Id.*  The full evaluations were not completed until May 21, 2002, and were sent to Mr. Byers on May 22, 2002, by facsimile.  *Id.*  On that same day, a letter of invitation to an IEP meeting to review the evaluations was faxed to Mr. Byers, although he testified that he never received it.  *Id.*  A second letter of invitation to an IEP meeting was faxed on June 7, 2002, with three alternative dates.  *Id.*  Mr. Byers was not available on any of the proposed dates. *Id.*

  In the meantime, in April 2002, Ms. Johnson requested a due process hearing before a hearing officer to hear her complaint of an inadequate IEP for J.J., an unreasonable delay in completing the reevaluations, and a request for compensatory education. Def.'s Opp'n at 2.  This hearing was conducted on July 16, 2002.  In a decision issued July 26, 2002, the hearing officer made the following findings of fact:

1. The SAIL IEP for [J.J.] in question [sic] was drafted on or before December 18, 2000, and became effective as early as December 18, 2000;
2. The parent signed the IEP on February 2, 2001;
3. The SAIL IEP for [J.J.] in question [sic] expired on 12-18-2001;
4. On January 8, 2002, the parent requested reevaluation of [J.J.];

5.     When the educational advocate stated during the January 22, 2002 IEP meeting that it would be acceptable to implement the old IEP for [J.J.], he meant for a reasonable period in which to complete the reevaluation;

6.     The reevaluation was completed on May 15, 2002, the date of the SAIL Speech/Language Evaluation; and

7.     127 day[s] is an unreasonably long period of time in which to complete a reevaluation.

A.R. at 7.  As it does here, SAIL argued to the hearing officer that the IEP was drafted in December 2000, but did not, and could not, become effective until Ms. Johnson signed it as J.J.'s parent.  SAIL therefore argued that the relevant year for the IEP was February 2, 2001, to February 1, 2002. Mot. Summ. J. at 5.  The "beginning dates" listed on the IEP as being December 2000 through December 2001 were erroneous, according to SAIL, because the dates were entered on the form in anticipation of a December 2000 IEP meeting, which did not occur because Ms. Johnson did not attend.  SAIL noted to the hearing officer, and here, that all three dates were put on the form as the IEP meeting was rescheduled until Ms. Johnson could attend.  *Id.*

The hearing officer rejected SAIL's arguments and concluded that the IEP was completed on or before December 18, 2000, became effective on December 18, 2000, and expired a year later. A.R. at 8.  Specifically, he held that "[a] parent's signature is not required to implement an IEP; a parent's signature is required only before implementing the first IEP."  *Id.*  The hearing officer based his conclusion on the most important consideration, "[J.J.'s] education."  *Id.*  "The IEP completed on December 18, 2000 was directed at [J.J.'s] education as it was considered on December 18, 2000, not February 2, 2001.  A child's education is or should progress continually."  *Id.*  An IEP is valid for, at most, one year.  Finding that J.J. was without a valid IEP between December 18, 2001, and the January 22, 2002, meeting when the educational advocate authorized

-4-

continued use of the expired IEP, and for a reasonable period to complete the reevaluation, the HOD

ordered one hour of compensatory education for each day that J.J. had an invalid IEP. *Id.* at 9.

Although the hearing officer recognized that the educational advocate authorized

continued reliance on the IEP drafted in December 2000, he held that such authorization would be

deemed to last only for a "reasonable period of time within which to complete the reevaluation."

*Id.* at 8. It took SAIL 127 days to complete the reevaluation (from January 8, 2002, when Ms.

Johnson requested it, to May 15, 2002, the date of the last test). "The hearing officer considered 90

days the outside limit for reevaluation given the fact that [J.J.] was without a current IEP." *Id.* He

therefore ordered compensatory education of one hour for each school day between December 18,

2001, and January 22, 2002, as well as for each school day between April 12, 2002, and May 15,

2002.[1] *Id.* at 9.

In this Court, SAIL challenges the compensatory education ordered by the HOD as

a vehicle to challenge any award of attorney's fees to Ms. Johnson. The parties have resolved all

other issues between them concerning J.J.'s education and the HOD order.

## II. LEGAL STANDARDS

### A. Jurisdiction

Pursuant to 28 U.S.C. § 1331(a), the "district courts should have original jurisdiction

of all civil actions arising under the Constitution, laws, or treaties of the United States." For

---

[1] It appears that the hearing officer supported this decision by concluding that "[w]hen the educational advocate authorize the continued implementation of the expired IEP on January 22, 2002, the denial of FAPE that began on December 18, 2001 abated for 90 days." A.R. at 8. However, it is not clear to the Court how he established the April 12, 2002, date. Counting calendar days, April 22, 2002, not April 12, 2002, is 90 calendar days after January 22, 2002.

purposes of this statute, a claim "arises under" federal law in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Laborers Vacation Trust Co.*, 463 U.S. 1, 27-28 (1983); *Quarles v. Colo. Sec. Agency, Inc.*, 843 F.2d 557, 558 (D.C. Cir. 1988). IDEA is such a federal law.

### B.  Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Liberty Lobby*, 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Liberty Lobby*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Liberty Lobby*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*  In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### C.  Judicial Review of IDEA Due Process Hearing

IDEA contains a number of procedural safeguards for parents of a disabled child, principally that parents must be notified in writing of any proposed change in "the identification, evaluation, or educational placement of the child" and are permitted to challenge "any matter relating [there]to."  20 U.S.C. § 1415(b)(3)(B), (b)(6).  After the possibility of mediation, parents can have their complaints considered in "an impartial due process hearing."  § 1415(f).  Any party aggrieved by the result of such a hearing may "bring a civil action . . . in any State court of competent jurisdiction . . . or in a district court of the United States."  § 1415(i)(2)(A).  In any civil action that has been brought pursuant to § 1415(i)(2)(A), "the court – (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii)

basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(B).  "[A] party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong."  *Reid*, 401 F.3d at 521 (quoting *Kerkam v. Mackenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).  At 20 U.S.C. § 1415(e), the law states that the reviewing court shall "receive the records of the administrative proceedings," requiring due weight be given such proceedings.  *Kruvant v. District of Columbia*, No. 03-1402, slip op. at 6 (D.D.C. Aug. 10, 2005) (citing *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)).  "Several courts have applied this 'due weight' standard to eligibility determinations, describing it as calling for some measure of deference to the HOD."  *Id.* (citing *Kroot v. District of Columbia*, 800 F. Supp. 976, 980-81 (D.D.C. 1992); *Krista P. v. Manhattan Sch. Dist.*, 255 F. Supp. 2d 873, 884 (N.D. Ill. 2003)).

## III.  DISCUSSION

The hearing officer identified two separate failures of SAIL to provide a FAPE to J.J. The first concerned the failure to implement a new IEP for J.J. between the dates of December 18, 2001, and January 22, 2002, when the educational advocate agreed that continued reliance on the prior IEP was appropriate while new evaluations were conducted.  A.R. at 9.  The second concerned the failure of SAIL to complete all evaluations within a reasonable period, determined by the hearing officer to be 90 days.  *Id.*  These will be reviewed separately.

### A.  Failure to Implement December 2001 IEP

There is no dispute over the fact that SAIL drafted a new IEP for J.J. at a date prior

to December 18, 2000, and intended to present it at an IEP team[2] meeting on that date.  The team meeting did not occur because Ms. Johnson did not attend.  Had the meeting occurred and had the IEP, as drafted or as modified by meeting attendees, been adopted, it presumably would have been implemented shortly thereafter.  Believing that it needed Ms. Johnson's concurrence before it could implement a new IEP, however, SAIL did not implement its draft IEP in December, but instead awaited Ms. Johnson's concurrence that did not come until the third attempt to convene an IEP team meeting on February 2, 2001.  A similar series of failed efforts to convene the next year's IEP team meeting occurred, until the educational advisor agreed at the January 22, 2002, IEP team meeting that SAIL should continue to rely on the prior IEP while new evaluations of J.J. were conducted.  According to the HOD, the educational advocate "abated the denial of FAPE for a reasonable period of time within [which] to complete the reevaluation[s].  The parent made no complaint about the IEP other than expiration."  A.R. at 8.

      The critical aspect of the HOD is its finding that "IEP goals and objectives are valid for a year *from the date they are written*. . . .  The IEP year expired on December 18, 2001, whether SAIL implemented the IEP on December 18, 2000, or on February 2, 2001, when Ms. Johnson

----

[2]At 34 C.F.R. section 300.344(a), IDEA regulations provide:
The public agency shall ensure that the IEP team for each child with a disability includes –
    (1) The parents of the child;
    (2) At least one regular education teacher of the child . . . ;
    (3) At least one special education teacher of the child . . . ;
    (4) a Representative of the public agency . . . ;
    (5) An individual who can interpret the instructional implications of evaluation results . .          . ;
    (6) At the discretion of the parent or the agency, other individuals who have knowledge or       special expertise regarding the child . . . ; and
    (7) If appropriate, the child.

signed the IEP." *Id.* (emphasis added).  The hearing officer explained why the IEP year starts when the IEP draft is completed and not when the IEP team meets, agrees, and implements: "The IEP completed on December 18, 2000[,] was directed at [J.J.'s] education as it was considered on December 18, 2000, not February 2, 2001." *Id.*  The Court is troubled by the effect of this logic, which is to excise the role of the IEP team from the review and revision of IEPs.

Federal regulations place the responsibility for "[r]eview and revision of IEPs" with the LEA Charter School, which must "ensure that the IEP team . . . (1) [r]eviews the child's IEP periodically, but not less than annually, to determine whether the annual goals for the child are being achieved; and (2) [r]evises the IEP as appropriate." 34 C.F.R. sec 300.343©).  For this purpose, Kimberly Morton, Principal of SAIL, testified that SAIL drafted a new IEP for J.J. sometime on or about December 18, 2000, for a scheduled IEP team meeting which Ms. Johnson did not attend, re-scheduled the IEP meeting for January 31, 2001, which Ms. Johnson did not attend, and finally held the IEP meeting on February 2, 2001.  SAIL believed that the new IEP started for J.J. when it was approved at the IEP meeting; the HOD would start the new IEP for J.J. immediately upon its drafting without regard to any input or modifications arising from the IEP team.  The regulations require SAIL, as an LEA Charter School, to "ensure that the IEP team" conducts an annual review and makes appropriate revisions to the IEP of each child receiving special education. The other members of each IEP team share the obligation to conduct the annual review and participate in determining appropriate revisions.  Certainly J.J.'s parent, a necessary and primary member of the IEP team, shares that obligation.  The education of disabled children is not a game of "gotcha."  The Court is very troubled by the proposed result here: the parent of the child fails to respond on a timely basis to a charter school's request for an annual IEP team meeting and then successfully sues the charter

school for not implementing a new IEP that had not been reviewed by the team.

However, the Court's decision need not rest on this anomaly. On December 20, 2001, SAIL sent letters of invitation to attend an IEP meeting to the IEP team for J.J. "On January 3, 2002, Mr. Byers [the educational advocate] telephoned to request an IEP meeting at 11:30 A.M., January 14, 2002; [SAIL] faxed a confirmation of the IEP meeting. On January 11, 2002, Mr. Byers called to change the IEP meeting to January 22, 2002; SAIL complied." A.R. p. 5. At the January 22 meeting, the IEP team agreed to extend further the IEP drafted in December 2000 while reevaluations were conducted. Inasmuch as the IEP team agreed to extend the December 2000 IEP (implemented in February 2001), there was no time between December 18, 2001, and the end of a period for reevaluations when J.J. was not receiving a FAPE. The educational advocate's agreement to extend the December 2000 IEP did not merely "abate the failure to provide FAPE" into the future, but also necessarily agreed that J.J. had been receiving a FAPE from its "expiration" date of December 18, 2001.

Although the Court agrees that it owes deference to the HOD, that deference does not extend to unreasonable or arbitrary results. It is both unreasonable and arbitrary to hold that SAIL had an obligation to implement a new IEP in December 2001 – without any input from the IEP team – replace it with the former IEP after J.J.'s IEP team agreed to extend the December 2000 IEP for reevaluation, and pay compensation for the interim. The agreement to extend the December 2000 IEP for reevaluation was reached because it was considered to be in the best interest of J.J.'s education planning.[3] All parties agreed that it was not reasonable to finalize a new IEP without the

---

[3] Ms. Johnson requested reevaluations of J.J. on January 8, 2002, and the education advisor requested reevaluations of J.J. on January 22, 2002.

results of those reevaluations.  Similarly, it was not reasonable to find that SAIL failed to provide a FAPE to J.J. between December 18, 2001, and January 22, 2002, when he was being instructed under the exact same IEP on each and every one of those dates as before December 18 and after January 22.

### B.  Reasonable Period to Complete Reevaluations

The HOD found that the agreement of the parent and educational advocate to continue J.J. under the December 2000 IEP was for a "reasonable period" so that reevaluations could be completed.  A.R. at 7 ("When the educational advocate stated during the January 20, 2002 IEP meeting that it would be acceptable to implement the old IEP for [J.J.], he meant for a reasonable period in which to complete the reevaluation.").  The Court finds no fault with this logic, which comports with legal norms.  The HOD further determined that ninety (90) days was a reasonable period of time to complete the reevaluations, *id.* at 8, and that 127 days was too long, especially because J.J. was being educated under an old IEP. *Id.* at 7.

SAIL protests that the hearing officer plucked 90 days out of the air and that no regulation governs the speed with which reevaluations must be conducted.  While there is no specific regulation, the Court accepts the hearing officer's exercise of his judgment as to what would constitute a reasonable period; that is, after all, part of his adjudicative function.  However, having selected 90 days as the reasonable period, the hearing officer was obligated to give SAIL allowance for a full 90 days.  The hearing officer's calculation ignored the fact that J.J. was  available to SAIL and evaluators only on school days.  The number of school days between January 8, 2002, and May 15, 2002, was approximately 84, accounting for federal holidays and 5 days for spring break, within

the 90-day period selected as "reasonable" by the hearing officer.[4]

The Court concludes that SAIL completed the reevaluations within the "reasonable" period identified by the hearing officer and therefore did not fail to provide FAPE to J.J.

## IV.  CONCLUSION

The education of disabled children is critically important and requires the regular attention of his school, his parent, and the experts who advise and guide them.  In this case, everyone agreed on January 22, 2002, that J.J. should continue to be educated under the December 2000 IEP because a new IEP should not be developed without reevaluations.  Since J.J. was, in fact, educated under the December 2000 IEP after December 18, 2001, and through January 22, 2002, and thereafter, there was no occasion on which he was lacking a FAPE in that period.  Further, the Court agrees with the hearing officer that the period for reevaluations of J.J. could only continue for a "reasonable" time and accepts his judgment that 90 days was that reasonable time.  However, since J.J. was only available to SAIL and evaluators on school days, the Court recalculates the 90-day period and concludes that SAIL completed its reevaluation on the timeline specified by the hearing officer.

---

[4]Because the hearing officer started with January 8, 2002, the date J.J.'s mother requested the reevaluation, rather than January 22, 2002, the date the educational advocate permitted use of the old IEP, the Court also used January 8, 2002, to reach this conclusion.

Judgment will be entered in favor of SAIL.  As a result, Ms. Johnson's claim for attorney's fees is without merit.  A memorializing order accompanies this memorandum opinion.


Date: April 13, 2006                                  _____/s/_____

                                                      ROSEMARY M. COLLYER

                                                      United States District Judge